This time we'll hear United States v. Bishanoth. Good morning. Good morning, and may it please the Court. My name is Michael Califano, and I represent defendant appellant Ravi Bishanoth. The Court should reverse Mr. Bishanoth's convictions for arson and arson conspiracy with respect to a March 2014 and February 2015 fire. With respect to Mr. Bishanoth's March 2014 arson conviction, the government failed to introduce sufficient evidence at trial that 1725 University Avenue was engaged in interstate commerce or in an activity affecting interstate commerce at the time of that fire. The undisputed evidence at trial demonstrated that the building, which previously housed a $0.99 store, was vacant, and no witness, including the building's two owners and one store employee, testified that any active preparation was being done. It doesn't have to actually be in business, so long as there's evidence of definite plans to go into business. Yes, Your Honor. In United States v. Iodice, this Court held that temporarily vacant property can still be in the stream of commerce or in an activity affecting interstate commerce so long as there is evidence at trial. No one is thinking that this shop is going to be turned into a park. Your Honor, the evidence here at trial, however, did not establish that there was any active preparation, any plans. Can't the jury infer from the overall sequence of events from 2013 to 2015 that there was every intent on the part of the owner of this particular property to get back into business? Indeed, that was the whole reason for the government's theory, the whole reason for these arsons, was to stop him from getting back into business, and it happened repeatedly over time. That's evidence, is it not, of preparation and intent? No, Your Honor. Your Honor, the government pointed post-trial to five pieces of evidence that they claim demonstrate that the building was still engaged in interstate commerce. First, they point to the owner's testimony that he wanted to reopen the store, but the owner didn't provide any plans or any arrangements that were actually being undertaken to bring the store back into the stream of commerce. What time were you talking about? In March 2014. So for the first charged fire. Second, they point to a sign that was posted outside of the building on the day after the fire, which they claim shows that the building was under construction at the time of the March 2014 fire. However, no witness talked about this construction, its anticipated date for completion, or any other information regarding the supposed construction. Third, they point to Mr. Bichuneth's supposed fear that if the store opened up in the future, it would hurt his business. But the subjective fear of the defendant is not relevant to whether actual plans existed by the responsible parties to bring the store back into the stream of commerce. Didn't the owner of the shop say he wanted to open up right away, but, you know, you have all these regulations and things you have to comply with, and that was causing delay. That doesn't mean that the work of bringing it back is not in train. Yes, Your Honor, but there has to be evidence at trial. And this court has held that the federal arson statute doesn't cover every vacant building that may someday be brought into the stream of commerce, or every building whose owner desires that someday it will be brought into the stream of commerce. What this circuit requires is that there is evidence at trial of sufficiently definite plans to bring that store in, including the owner's plans and arrangements to bring it into the stream of commerce. The store owner's desire to, you know, reopen it right away has no bearing on that because he didn't. Well, what if the plan to open it right away is delayed and retarded by compliance with fire regulations, occupancy laws, Department of Buildings rules? I mean, they're myriad. Yes, but none of that evidence was introduced at trial. There was no evidence at trial saying that they were, you know, having issues complying with any regulations, any administrative requirements. Didn't the owner say he planned to reopen it right away, but he was being delayed by compliance issues, by compliance? As I recall, Mr. Biot testified that he wanted to open it because it was a very good store. But he, you know, first and foremost couldn't connect the dates to any of the fires. And secondly, he — I don't recall any testimony concerning, you know, any regulations that he was dealing with, just his — What about the fact that the store officially did reopen in January of 2015? The fact that the store did eventually reopen also doesn't demonstrate the existence of sufficiently definite plans at the time of the March 2014 fire. And — It's demonstrated directly, but isn't it circumstantial evidence that there were prior plans to reopen? And couldn't the jury then infer that the plans were in place all along, that this fellow just wanted to continue his business there? Well, under Jones v. United States, past passing or passive connection to interstate commerce is not enough. What happened to the building in the future, the character of the building in the past, has no bearing on what the owner's plans were at the time of the March 2014 fire. The district court, in denying the motion for acquittal, referred to some work permits that were posted in the building. Is that correct? The district court was referring to a photograph, the photograph of — Is it in evidence? The photograph was in evidence. However, there was no testimony concerning these work permits, the work permits, to the extent that they were work permits. Were they on the building? I'm sorry? Were they on the building? They were posted on a board that was outside of the building. But there was no testimony, you know, regarding any work permits, frankly, during trial. It's literally, you know, a photograph and pieces of paper that are hanging up on a wooden plank. But there was no testimony about, you know, whether these in fact were work permits, what the work permits concerned, and if they had any relation to any construction on 1725. Do you object to their introduction on the ground of relevance? No, Your Honor. Because the photo was introduced at trial to show, you know, the outside. We didn't object to the photograph. And because there was no discussion of the work permits, we didn't have occasion to object to introduction of that. But the jury could have looked at the photographs and seen work permits. No, Your Honor. I mean, they may just be pieces of paper stapled onto an upright, but usually these work permits, they're not blinking neon signs. That's what they are. They're pieces of paper. The issue of whether these were, you know, were actually work permits was never addressed during trial. This was a post-trial characterization of, you know, pieces of paper that are out of focus on a picture. And so no rational juror could have inferred that, you know, these pieces of paper that were never talked about during trial were work permits, and not only work permits, work permits that were related to work that was being done to bring 1725 University Avenue back into the stream of commerce. Is there a rebuttal? Yes, Your Honor. Thank you. Are you there? Good morning. Good morning. May it please the Court, my name is Stephanie Lake, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal, and I represented the United States at trial. As the jury and Judge Pauly concluded, there was ample evidence of Bashuna's guilt on all four counts presented at trial in this case. This is the third time that the defendant has made the very same arguments, and they are no more compelling now than they were at the trial in this case. This Court should uphold the jury's verdict and affirm the defendant's convictions. I'll address very briefly one of the points that the defendant has made about the interstate commerce element and the proof of interstate commerce with respect to the March 2014 trial. There was an abundance of proof that there was an intent to return the store to the stream of commerce. I would direct the Court to the case United States v. Iodice, which discusses some of the facts that may provide adequate proof of an intent to return a store that's not currently in operation to the stream of commerce. In Iodice, the Court looked at the fact that the owner of the movable diner said that he intended to reopen the diner in approximately six months, and the fact that it was ready to open, and the fact that somebody had gone through the trouble of commissioning an arson of that building. Here you have far more proof than they had in Iodice. You're saying that the fact that somebody bothers to burn it down means it's more likely to be brought into the stream of commerce? It doesn't mean that it's necessarily more likely, but... That does seem a little circular. One of the defense arguments at trial was why would somebody burn down a burned out building, and the answer to that is because they believe that it's going to be reintroduced into the stream of commerce. Here, the victim's store was only closed for three months at the time of the March 2014 fire, and it only closed because there had already been a fire. In Iodice, that movable diner had never been opened before. It was purchased a year and a half earlier, and it had never been opened. Here, the owner of the store testified that he intended to reopen the store immediately after the December 2013 fire because it was a very good store. It was a profitable store for him. And buttressing that is testimony from Jonathan Martin that the store was coming back together at the time of the March 2014 fire, that the defendant told him that he commissioned the fire because he was concerned that if the store came back, it would damage his business, and again, the fact that why would somebody burn down a burned out store unless they were concerned about competition? The store was boarded up at that point, wasn't it? There was a board in front of it, and I want to address the work permits that have been discussed. The court can view the front of the store at appendix page 422, and there are permits very clearly displayed on the board in the front of the store saying if you have any complaints about this work site, call this number. The general contractor for this work site is EMF Contracting, and then you can see, which are a little blurry, the New York City Department of Work permits that are posted next to that. There's every indication that this was an active work site at the time of the March 2014 fire, and it's not speculation to look at that photograph and say that photograph shows that there was active planning and preparation to bring the store back into the stream of commerce. Your theory was that gasoline was used for the arson, I think for both of them, but there was a fire department investigation, and they concluded that it was not. I think they concluded it wasn't arson and that no gasoline was used. So with respect to the March 2014 fire, which is the first fire that was charged here, the fire marshal who came to investigate the scene 12 hours after the fire said that he didn't smell any gasoline, but the firefighter who was the first person into the building who responded to the fire, put out the fire as it was happening, testified that he did smell gasoline at the scene of that arson. If the Court has no further questions, the government rests on its brief. Thank you. Thank you, Your Honors. Going back to United States v. Iodized, the evidence in that case was far stronger than the evidence we had here. There was testimony by the owner, the responsible party, that the diner was ready to open, and in fact there was an actual date, April 2002, that they were going to open the store. The fact that there may be more evidence in another case doesn't necessarily mean that lesser amount of evidence is insufficient. Yes, however, the evidence here, none of it establishes that it was either in interstate commerce or that the owners were preparing to bring it back into the stream of commerce. And it would have been easy if there actually were plans. One of the store owners, there were two owners that testified, one of the managers, one of the employees, could have testified as to the plans that were actually in place at the time of the March 2014 fire, and when they planned on reopening, similar to what there was testimony concerning in United States v. Iodized, but there wasn't. There was no testimony regarding that. Wasn't there testimony that at the time of the second fire, the 2014 fire, there was stock or provisions for sale that would eventually be for sale in the store at that time? No, Your Honor. Firefighter Michael Farrell, who was the responding firefighter for that fire, did testify that he saw stock in the bottom floor. However, he wasn't sure if it was historical stock or new stock and specified that there was nothing of value in the store. So it wasn't as if it was stock that was ready for sale. It was literally rubbish. Going back to the photograph, the government claims that there was every indication from that photograph that this was an active work site, but there's simply no testimony in the record concerning that. And even if it was, the jury could take an inference that there was construction, there was no testimony or evidence to tie that construction into bringing 1725 University Avenue back into the stream of commerce, and therefore the evidence was insufficient to establish that the store was in interstate commerce at the time of that fire. For the same reasons that the government failed to establish that the March 2014 fire violated the federal arson statute, its conspiracy count regarding that fire must also fail. The government would have been required to prove either that the building was in interstate commerce, which for the reasons I stated earlier it was not, or that one of the conspirators believed that it was engaged in interstate commerce. And there was no evidence that Mr. Diaz believed it. Mr. Martin's testimony was inconsistent at best with respect to whether he thought the building was going to reopen, and all the testimony concerning Mr. Bichuneth's belief was that his supposed belief that if the store reopened in the future, it would hurt his business. But there was no testimony that he actually believed at the time that it was going to reopen. Thank you. Thank you, Your Honor.